1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8

| SANDRA L MATEJKA, | |
|---|---|
| Plaintiff, | CASE NO. 2:25-cv-00199-BAT |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| BLUE ORIGIN ENTERPRISES LP, Jeffrey Preston Bezos, Paul Weber, Audrey Powers, Kimberly Miltimore, Mary Plunkett, David Rund, CJ DeCillia, Jeff Doty, | |
| Defendants. | |

Defendants seek dismissal of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6). Dkt. 23. Plaintiff filed no response to the motion.

Having reviewed Plaintiff's Complaint, the motion to dismiss, and balance of the record, the Court grants the motion.

## PLAINTIFF'S FACTUAL ALLEGATIONS

On October 4, 2021, Plaintiff Sandra Matejka accepted an offer of employment from Blue Origin, LLC ("Blue Origin") to work as an executive assistant. Dkt. 1-1 at 1-2; *see id*. at 3. She signed an Employee Agreement that same day. *See* Dkt. 24, Declaration of Scott Horton

1   ("Horton Decl."), Ex. 1 ("Agreement").[1] Plaintiff's employment required her to report to work in

2   person at an office in Kent, Washington and a launch site in Van Horn, Texas, in addition to

3   performing other duties from home. Dkt. 1 ("Compl.") ¶ 5.6. That same day, Plaintiff spoke with

4   Defendant Human Resources Recruiter C.J. deCillia to discuss the terms of her employment and

5   deCillia informed Plaintiff that Blue Origin was formulating its COVID-19 vaccination policy.

6   Compl. ¶ 5.1. Plaintiff informed deCillia that she intended to seek an exemption from any

7   vaccination requirement based on "personal choice" informed by a recent blood test that revealed

8   COVID-19 antibodies already in her bloodstream. Compl. ¶ 5.1.

9       By Plaintiff's November 1, 2021, start date, she had been made aware of Blue Origin's

10  COVID-19 vaccination requirement for all employees. Compl. ¶¶ 5.3, 5.7. She signed her

11  exemption request form on November 5 and submitted it shortly thereafter. Compl. ¶ 5.7, Dkt. 1-

12  1 at 6-9 (Compl. Ex. 4). The form included a written statement by Plaintiff explaining that she

13  would not take any COVID-19 vaccine "because doing so would violate my sincerely held

14  religious belief that my body is a holy temple, made by my creator, and I will not defile it with

15  unwanted or hazardous intrusions. . . that would do harm to my body or that would otherwise

16  alter my biological material[.]" Dkt. 1-1 at 9.

17      On December 22, 2021, Plaintiff met with Defendants Kimberly Miltimore and David

18  Rund, both Human Resources Representatives for Blue Origin, to discuss Plaintiff's religious

19  exemption request. Compl. ¶ 6.1. Miltimore and Rund identified another executive assistant

20  position within the company to which Plaintiff could potentially transfer as a form of

21  _____

22  [1] Plaintiff's breach of contract claim necessarily relies on the Agreement and thus her Complaint
    incorporates it by reference and may be considered by the Court in determining this motion. *See*,
23  *Gershfeld v. TeamViewer US, Inc.*, No. 21-55753, 2023 WL 334015, at *1 (9th Cir. Jan. 20,
    2023) (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT - 2

accommodation, since the launch site to which Plaintiff was originally responsible for reporting required employee vaccination against COVID-19. *Id*. The alternative position was not hybrid and would require Plaintiff, as an unvaccinated person, to be socially distanced and masked 100% of the time she reported to work. *Id*. Plaintiff said that, due to medical conditions, she would not be able to mask 100% of the time and would need to work entirely virtually or be granted a medical exemption in this accommodated role. *Id*. Because Plaintiff stated her inability to mask was for medical reasons, on January 4, 2022, Blue Origin provided Plaintiff with a medical accommodation packet to complete. Compl. ¶ 6.3.

Despite Blue Origin's follow-up, Dkt. 1-1 at 28, Plaintiff never completed or returned the medical accommodation packet to Blue Origin, thus precluding Blue Origin from moving forward with providing Plaintiff the reasonable accommodation it had identified in response to her religious exemption request. Compl. ¶¶ 6.5, 6.6. On January 28, 2022, Blue Origin notified Plaintiff it had not received the medical accommodation paperwork, and it would, therefore, move towards terminating her for non-compliance with its COVID-19 vaccination policy as Plaintiff had not been vaccinated or cooperated with Blue Origin's attempts to accommodate her. Compl. ¶ 6.6. Plaintiff's employment with Blue Origin ended on February 2, 2022. Compl. ¶ 5.5.

Plaintiff filed this lawsuit on January 30, 2025, alleging: (1) a right to privacy violation based on Defendants' alleged violation of her right to choose what medical treatment she receives under the First and Fourteenth Amendments; (2) a right to liberty violation based on her right to refuse medical treatment and unjustified intrusions into her body; (3) an informed consent violation based on Defendants' alleged failure to advise her of all possible risks, material facts regarding treatment, possible alternative treatments, and the right to non-treatment; (4) retaliation and discrimination in terminating Plaintiff's employment for refusing "self-harm"; (5)

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT - 3

Title VII and 42 U.S.C. § 1983 discrimination by Defendants acting in concert with state actors to coerce Plaintiff to be vaccinated; and (6) Defendants' breach of contractual obligations by terminating Plaintiff without informing a COVID vaccination was required for work at the Texas Blue Origin launch site. Compl. at 33-38.

Plaintiff has not yet completed service on Defendants Jeffrey Preston Bezos, Jeff Doty, Mary Plunkett, and David Rund. *See* Docket.[2]

LEGAL STANDARD

A.      Rule 12(b)(5)

"A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc*., 840 F.2d 685, 688 (9th Cir. 1988) (citation omitted). Service on an individual may be made by "delivering a copy of the summons and the complaint to the individual personally;" "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there;" or "delivering a copy of each to an agent authorized by appointment or by law to receive service of process[;]" or by following state law to effectuate service. Fed.R.Civ.P. 4(e). Under Washington law, service on an individual may be made "to the defendant personally, or by leaving a copy of the summons at the house of his or her usual abode with some person of suitable age and discretion then resident therein." RCW 4.28.080(16); see also CR 4(d)(2).

---

[2] In the Joint Status Report, Plaintiff states Blue Origin, Paul Weber, Audrey Powers, Kimberly Miltimore and CJ deCillia have been served with proof of service being filed but service has been unsuccessfully attempted for Jeff Doty, Mary Plunkett, and David Rund with proof of non-service being filed. Plaintiff indicates she will need more time to locate a serviceable address for Jeffrey Preston Bezos but has not sought the additional time from the Court.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT - 4

1    "[W]ithout substantial compliance with Rule 4, neither actual notice nor simply naming

2    the defendant in the complaint will provide personal jurisdiction." *Direct Mail Specialists*, 840

3    F.2d at 688 (internal quotation marks and citation omitted). If proper service is not made within

4    90 days after filing the complaint, the court "must dismiss the action without prejudice . . . or

5    order that service be made within a specified time." Fed.R.Civ.P. 4(m). When service of the

6    complaint and summons is challenged, the plaintiff bears the burden of establishing that service

7    validly occurred. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). "Rule 4(e) must be

8    strictly complied with, and a pro se plaintiff is not given an exception." *Smith v. Weber*, No.

9    C13-5207 RJB, 2013 WL 12191398, at *6 (W.D. Wash. July 30, 2013) (citing *Am. Ass'n of*

10    *Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107-08 (9th Cir. 2000)).

11   B.    Rule 12(b)(6)

12          "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

13    accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

14    662, 678 (2009) (internal citations omitted). Allegations that are "merely consistent with a

15    defendant's liability" or consist of "'a formulaic recitation of the elements of a cause of action

16    will not do.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Courts are not

17    required to accept factual allegations couched as legal conclusions, *id*., or "allegations that are

18    merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v.*

19    *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

20          In resolving a motion to dismiss, the Court may consider materials incorporated into the

21    complaint by reference and matters of judicial notice. *PBTM LLC v. Football Nw*., LLC, 511 F.

22    Supp. 3d 1158, 1170 (W.D. Wash. 2021). Dismissal is proper where there is either a "lack of a

23    cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

1  theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "If the running of

2  the statute is apparent on the face of the complaint, a statute of limitations defense may be raised

3  by a motion to dismiss." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)

4  (citations omitted).

5          Dismissal with prejudice is appropriate when no amendment can cure a deficient

6  complaint. *Hernandez v. Fed. Home Loan Mortg. Corp.*, 663 F. App'x 518, 520 (9th Cir. 2016)

7  (unpublished) (citing *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725-26 (9th Cir. 2000)).

8                                    DISCUSSION

9  A.    Plaintiff's Failure to Serve Defendants Jeffrey Preston Bezos, Jeff Doty, Mary Plunkett,
       and David Rund

10

11         Defendants Jeffrey Preston Bezos, Jeff Doty, Mary Plunkett, and David Rund do not

12  waive their defenses under Fed. R. Civ. P. 12(b)(2), but present argument as relating to Rule

13  12(b)(5) because their challenge to this Court's jurisdiction arises solely from the fact they have

14  not been served. *See Carr v. Naval Base Kitsap Bremerton*, No. 3:18-CV-06005, 2021 WL

15  322518, at *2 (W.D. Wash. Feb. 1, 2021) (granting dismissal under Rules 12(b)(2) & (5) where

16  analysis derives solely from Plaintiff's failure to effectuate service under Rule 4). Defendants do

17  not consent to jurisdiction by filing this motion. *See Jackson v. Hayakawa*, 682 F.2d 1344, 1347

18  (9th Cir. 1982) (under Rule 12, waiver occurs only if a defendant fails to challenge the defect in

19  a preliminary motion or responsive pleading).

20         Under Rule 4(m), Plaintiff had 90 days from filing her Complaint on January 30, 2025, to

21  serve each defendant. As of June 9, 2025, 130 days after the Complaint's filing, Defendants

22  Jeffrey Preston Bezos, Jeff Doty, Mary Plunkett, and David Rund have not been served. *See*

23  Docket. Rule 4 must be strictly complied with (irrespective of Plaintiff's appearance pro se),

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT - 6

1    *Hayhurst*, 227 F.3d at 1107-08. Plaintiff has provided no explanation nor sought additional time

2    to complete proper service on these defendants.

3        Based on Plaintiff's failure to timely serve defendants or otherwise seek relief,

4    Defendants' motion to dismiss Plaintiff's claims against Defendants Jeffrey Preston Bezos, Jeff

5    Doty, Mary Plunkett, and David Rund is granted.

6    B.    Failure to State A Claim Against Any Named Defendant

7        1.    Blue Origin Enterprises

8        Plaintiff asserts employment related claims against Blue Origin Enterprises, L.P. ("Blue

9    Origin Enterprises"). *See e.g.*, Compl.. ¶ 2.2. However, the exhibits to Plaintiff's Complaint and

10   her employment Agreement demonstrate that Plaintiff was employed by Blue Origin, LLC, a

11   different entity that Plaintiff has not named in this lawsuit. *See* Dkt. 1-1 at 3 (earnings statement

12   from Blue Origin, LLC); Agreement (setting forth terms of Plaintiff's employment with Blue

13   Origin, LLC). Because Plaintiff asserts no plausible claims against Blue Origin Enterprises, with

14   which she had no employment or other relationship, the Court dismisses all claims against that

15   entity. *See Iqbal*, 556 U.S. at 678; *Gonzalez*, 759 F.3d at 1115 (court need not accept as true

16   allegations that contradict matters incorporated by reference).

17       2.    Defendants Bezos, Weber, and Doty

18       Defendants Jeffrey Preston Bezos, Paul Weber, and Jeff Doty appear in Plaintiff's

19   Complaint solely within its caption. See Compl. There is no allegation any of these individuals

20   acted as Plaintiff's employer or took any action with respect to Plaintiff's employment. Plaintiff

21   includes zero factual allegations about these individuals, much less allegations sufficient to give

22   rise to any claim for relief under Rule 8. *Id.*

23

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claims against Defendants Bezos, Weber, and Doty for failure to state a claim upon which relief may be granted against these defendants.

3.    <u>Defendant deCillia</u>

The Complaint contains the following single allegation against Defendant deCillia:

> Plaintiff had a telephone conversation with Blue Origin Human Resources Recruiter C.J. deCillia to discuss terms of employment, in which deCillia mentioned that Blue Origin COVID-19 policy and requirements were being formulated.

Compl. ¶ 5.1. This single allegation does not give rise to any plausible claim for relief under Rule 8. *See Iqbal*, 556 U.S. at 678. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claims against Defendant deCillia.

4.    <u>Defendant Plunkett</u>

The Complaint includes a solitary allegation about Defendant Plunkett, stating that another defendant told Plaintiff he "would discuss the possibility of Plaintiff meeting with [Defendant Plunkett] about a potential Executive Assistant position in the Human Resources department[.]" Compl. ¶ 6.1. A single allegation that another person said he would discuss a possible meeting between Plaintiff and Defendant Plunkett gives rise to no plausible claim for relief against Plunkett. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claims against Defendant Plunkett.

5.    <u>Defendants Miltimore and Rund</u>

With respect to Defendants Miltimore and Rund, the Complaint pleads only that they, then representatives of Blue Origin's Human Resources Department, met with Plaintiff about her religious exemption request. Dkt. 1-1 at 6.1 This bare allegation does not give rise to any claim

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT - 8

1  for relief and therefore, the Court grants Defendants' motion to dismiss Plaintiff's claims against

2  Defendants Miltimore and Rund.

3          6.      Defendant Powers

4          Plaintiff alleges that her manager, Defendant Powers informed her of Blue Origin's

5  vaccination requirement (Compl. ¶ 5.9), acknowledged the existence of Plaintiff's exemption

6  request (¶ 6.0), did not know of a potential alternative position for Plaintiff before it was

7  mentioned to Plaintiff by Human Resources (¶ 6.1), and opined that "social distancing in the

8  current office situation was not achievable" (¶ 6.2).

9          These bare allegations do not support any plausible claim against Defendant Powers.

10  Thus, the Court grants Defendants' motion to dismiss Plaintiff's claims against Powers.

11          Plaintiff alleges no factual allegations or legal theory that would extend Plaintiff's

12  employer's potential liability for her termination to individuals such as her managers or Human

13  Resources personnel. *See Miller v. Maxwell's Intern., Inc*., 991 F.2d 583, 587 (9th Cir. 1993)

14  (finding it "inconceivable that Congress intended to allow civil liability to run against individual

15  employees" under Title VII); *Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033 (9th

16  Cir. 2006) (applying the logic of *Miller* in holding individual employees are not liable for

17  employment discrimination suits filed under the ADA); *Jones v. Central Pennsylvania General*

18  *Hospital*, 779 P.2d 783, 791 (1989) (an individual employee generally cannot be held liable for a

19  breach of contract between the employer and another third party).

20          Because the Complaint includes insufficient allegations with respect to each named

21  Defendant, the Court finds Defendants' motion to dismiss should be granted. The Court also

22  finds that, even if it could be inferred the Complaint's allegations are sufficiently attributable to

23  any named Defendant, the Complaint still fails to state any claim on which relief can be granted.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT - 9

C.    Failure to State a Claim for Relief

    1.    Plaintiff's Constitutional Claims (Counts 1 &2)

Plaintiff raises two federal constitutional claims, a violation of her right to privacy under the Fourth Amendment, and a violation of her right to liberty under the Fourteenth Amendment[3]. Compl. ¶¶ 8.1, 8.2. Although not specifically stated in the Complaint, it is assumed Plaintiff intends to bring these claims pursuant to 42 U.S.C. § 1983 ("Section 1983"). However, Defendants are not state actors for purposes of Section 1983 and therefore, her claims are subject to dismissal.

Courts "start with the presumption that conduct by private actors is not state action" and the plaintiff "bears the burden of establishing that [d]efendants were state actors." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011). Defendants are unquestionably private parties. *See* Compl. ¶¶ 8.1-8.2 ("To the extent that Defendant [sic] may claim to have been acting as an extension of government agencies…").

Where the plaintiff cannot meet the burden of showing the Defendants are state actors, the claim must be dismissed. *See, e.g., Prophet v. Dunham*, 358 F. App'x 890, 891 (9th Cir. 2009) (affirming dismissal of Section 1983 claim "because the complaint pleaded no facts suggesting that [defendant] was a state actor"); *Curtis v. PeaceHealth*, No. 3:23-CV-05741-RJB, 2024 WL 248719, at *6 (W.D. Wash. Jan. 23, 2024) (dismissing similar constitutional claims

---

[3] Plaintiff also purports to bring her privacy claim under Article I, Section 7 of the Washington Constitution, Compl. at ¶ 8.1, but "Washington law has no counterpart to [Section 1983] . . . and Washington courts have rejected attempts to create a private right of action for damages under the Washington Constitution absent guidance from the legislature." *Dunn v. City of Seattle*, 420 F. Supp. 3d 1148, 1156 (W.D. Wash. 2019). Plaintiff cites no such legislative authority for her state constitutional claim. *See, e.g., Topolski v. Washington State Dep't of Licensing*, No. 3:24-CV-05878-TMC, 2025 WL 774732, at *5 (W.D. Wash. Mar. 11, 2025) (dismissing with prejudice claims analogous to those here).

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT - 10

because no state action). Even if Plaintiff could establish that Defendants are state actors, her constitutional claims still fail because the individually named Defendants have qualified immunity, as they had no notice that a vaccination requirement could or would violate federal law. In analyzing qualified immunity, federal courts employ a two-prong analysis: whether the facts show the state actor's "conduct violated a constitutional right" and "whether the right was clearly established" at the time of the alleged unlawful action. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling *Saucier* by holding that courts may begin and end their analysis with either of the two prongs). Plaintiff can show neither prong.

To determine the second prong of the qualified immunity test, whether a right is clearly established, "the reviewing court must consider whether a reasonable [official] would recognize that his or her conduct violate[d] that right under the circumstances faced, and in light of the law that existed at that time." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065 (9th Cir. 2006). If a state actor did not have sufficient notice that their alleged conduct would violate federal law, he is entitled to qualified immunity. *See, e.g.*, *Jones v. Cnty. of Los Angeles*, 722 F. App'x 634, 637–38 (9th Cir. 2018). Here, Defendants' actions were consistent with – not in conflict with, federal law in force at all material times. *See, e.g.*, Ensuring Adequate COVID Safety Protocols for Federal Contractors, 86 Fed. Reg. 50,985 (Sept. 9, 2021) (Executive Order 14202, requiring federal contractors to become fully vaccinated against COVID-19 by December 8, 2021). Because the individual Defendants could not have been on fair notice of any potential constitutional violations associated with Blue Origin's vaccination requirement, they are entitled to qualified immunity, requiring dismissal of any constitutional claims against them.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT - 11

1

       3.       <u>No Fundamental Right to Refuse Vaccination</u>

2          It has been settled law in this country for more than a century that there exists no

3   fundamental right to refuse vaccination, in the workplace or otherwise. *Jacobson v.*

4   *Massachusetts*, 197 U.S. 11 (1905) (upholding Cambridge, Mass.'s, smallpox vaccination

5   requirement for city residents); *see also Children's Health Def., Inc. v. Rutgers*, 93 F.4th 66, 78

6   (3d Cir. 2024) ("As federal courts have uniformly held, there is no fundamental right to refuse

7   vaccination.") (collecting cases); *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021)

8   ("Given Jacobson … which holds that a state may require all members of the public to be

9   vaccinated against smallpox, there can't be a constitutional problem with vaccination against

10  [COVID]."); *Kheriaty v. Regents of the Univ. of California*, No. 22-55001, 2022 WL 17175070,

11  at *1 (9th Cir. Nov. 23, 2022) ("Kheriaty fails to offer any appropriate historical example to

12  establish a 'fundamental right' to be free from a vaccine mandate at a workplace.").

13        "In the context of COVID-19, courts across the country have concluded that *Jacobson*

14  established that there is no fundamental right to refuse vaccination" and "[c]ourts have also

15  consistently held that, following Jacobson, challenges to vaccination mandates are properly

16  considered under rational basis review.") *Williams v. Brown*, 567 F. Supp. 3d 1213, 1226 (D. Or.

17  2021) (collecting cases).

18        "Under rational basis review, state conduct is presumed valid and will be upheld so long

19  as it is 'rationally related to a legitimate state interest.'" *Williams*, 567 F. Supp.3d at 1226

20  (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)). The U.S. Supreme

21  Court has recognized that "[s]temming the spread of COVID-19 is unquestionably a compelling

22  interest." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020).

23

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT - 12

1    Even making all inferences in the light most favorable to Plaintiff, the only inference to

2    be made about Blue Origin's vaccination requirement is it was intended to prevent the

3    transmission of COVID-19 and thus further the safety of its employees and others. So even if the

4    actions of Defendants could somehow be considered state action implicating the U.S.

5    Constitution, and Blue Origin's vaccination requirement can be attributable to their conduct,

6    their purpose in instituting that requirement easily survives rational basis review. *Cuomo*, 592

7    U.S. at 18 (stemming COVID-19 transmission is compelling interest).

8    Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's constitutional

9    claims with prejudice.

10    4.    Lack of Informed Consent

11    Plaintiff's informed consent claim fails for several reasons. As a threshold issue, to the

12    extent Plaintiff brings her federal 21 U.S.C. § 360bbb-3 claim under the auspices of Section

13    1983, it fails for the same reasons discussed above; that is, no Defendant is a state actor. The

14    claim also fails because 21 U.S.C. § 360bbb-3, the section on which Plaintiff appears to rely

15    provides no private right of action and the RCW Chapter 7.70 provisions she cites require

16    Plaintiff to have received treatment from a medical provider without informed consent—a

17    predicate allegation necessarily missing from her Complaint.

18    a.    The PREP Act Contains no Private Right of Action

19    21 U.S.C. § 360bbb-3—the Emergency Use Authorization ("EUA") provision of the

20    Public Readiness and Emergency Preparedness ("PREP") Act—governs the authorization of

21    emergency use drugs, devices, or biological products by the U.S. Health and Human Services

22    Secretary during a public health or other national emergency. The statute outlines the criteria,

23    scope, and conditions associated with the authorization of an emergency use drug or other

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT - 13

product, including consideration of the known and potential benefits of the drug/product and the known or potential risks. *Id*. § 360bbb-3(c), (d), (e).

Courts that have considered the PREP Act have uniformly concluded that it provides no private right of action: "[T]here is no private right of action under the PREP Act. Moreover, the PREP Act is a part of the larger Food, Drug and Cosmetics Act ('FDCA'), and there is no private right of enforcement under the FDCA—implied or otherwise." *Stephens v. UW Med. Hosps. & Clinics*, No. C24-1707-JCC, 2025 WL 860542, at *3 (W.D. Wash. Mar. 19, 2025) (citing *Curtis*, 2024 WL 248719, at *7, 9 (punctuation omitted); *see also*, *e.g.*, *Roberts*, 2024 WL 5517091, at *8; *Smith v. Terminix Pest Control, Inc*., No. 22-3701, 2023 WL 3569127, at *2 (E.D. La. May 19, 2023); *Bridges v. Houston Methodist Hosp*., 543 F. Supp. 3d 525, 527 (S.D. Tex. 2021).

Accordingly, the PREP Act provides no basis for Plaintiff to assert a claim for lack of informed consent, leaving Plaintiff no possible basis under which she could validly bring this claim under federal law.

      b.    <ins>Plaintiff Cannot State a Claim Under RCW 7.70.030 *et seq*</ins>

Plaintiff's claim also fails under state law. Claims related to informed consent under Washington law arise when claimants receive medical treatment from a defendant provider without informed consent. *See Stephens*, 2025 WL 860542, at *3 (discussing analogous claim under same statutory framework before dismissing it because plaintiff refused to accept COVID19 vaccination and did not otherwise have patient relationship with defendant). Plaintiff bases her claims on the fact that she refused COVID-19 vaccination and makes no assertion that Blue Origin somehow functioned as her medical provider. *See generally* Compl. Her informed consent claim must be dismissed under state law.

1    Because no amendment can cure Plaintiff's lack of informed consent claim, the Court

2    grants Defendants' motion to dismiss this claim with prejudice.

3        3.    Plaintiff Fails to State a Viable Claim for Retaliation

4        Plaintiff does not clearly assert the legal basis for her retaliation claim, *see* Compl. ¶ 8.4,

5    so Defendants have liberally interpreted it to arise under Washington law. *See Hebbe v. Pliler*,

6    627 F.3d 338, 342 (9th Cir. 2010) (pro se filings are to be "construed liberally"). To the extent

7    Plaintiff intends to raise this claim under the federal Occupational Safety and Health Act

8    (OSHA), as referenced at Compl. ¶ 8.4, the claim should be dismissed because OSHA does not

9    provide for a private right of action. *See* 29 U.S.C. § 653(b)(4). To the extent Plaintiff intends to

10   raise this claim under Title VII, the claim should be dismissed for Plaintiff's failure to meet Title

11   VII's administrative exhaustion requirement as addressed below as to Plaintiff's religious

12   discrimination claim.

13       To state a claim for retaliation, a plaintiff must demonstrate that "(1) she engaged in

14   statutorily protected activity; (2) the defendant took some adverse employment action against

15   her; and (3) there is a causal connection between the protected activity and the discharge."

16   *Coville v. Cobarc Servs., Inc.*, 73 Wash. App. 433, 439, 869 P.2d 1103 (1994).

17       As a matter of law, a plaintiff cannot establish a causal connection between a protected

18   activity, such as a request for accommodation, and termination if a plaintiff simply refuses to

19   abide by a universally-applicable policy, which is exactly what Plaintiff alleges here. *See*, *e.g.*,

20   *Stephens*, 2025 WL 860542, at *4 ("Plaintiff was not terminated for engaging in protected

21   activity [*i.e.*, applying for a religious exemption]; rather, she was terminated for failing to

22   comply with her employer's directive [to obtain vaccination against COVID-19].")*; Linne v.*

23   *Alameda Health Sys.*, No. 22-cv-04981-RS, 2023 WL 375687, at *3 (N.D. Cal. Jan. 24, 2023)

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT - 15

(finding no causal connection alleged where plaintiff acknowledges that defendant's COVID-19 vaccination policy applied to everyone and required vaccination unless an exemption was granted); *Librandi v. Alexion Pharms., Inc*., No. 3:22cv1126(MPS), 2023 WL 3993741, at *8 (D. Conn. June 14, 2023) (dismissing retaliation claim after noting that plaintiff "points to no authority in support of her assertion that her refusal to comply with her employer's policy was 'protected activity,'" but "even assuming that it was," the plaintiff "failed to plausibly allege causation between her allegedly protected conduct and her termination" because "the factual allegations and the materials attached to her complaint do not suggest that [she] was terminated for objecting to [defendant's] COVID-19 policy; rather, they suggest that she was terminated because she failed to comply with it").

Here, Plaintiff has not alleged any causal connection between her request for accommodation, or any other protected activity, and her termination. Rather, Plaintiff expressly pleads that Blue Origin enforced its universally-applicable policy when it released her from employment for non-compliance, after Plaintiff refused to either receive the vaccine or complete the paperwork required to advance her accommodation request. *See Linne*, 2023 WL 375687, at *3; *Librandi*, 2023 WL 3993741, at *8. These facts are not in dispute as Plaintiff alleges them in her Complaint.

Based on the foregoing, the Court grants Defendants' motion to dismiss Plaintiff's retaliation claim with prejudice.

4.    Plaintiff's Religious Discrimination Claim is Not Exhausted

Plaintiff alleges religious discrimination under Title VII. However, her claim fails because she did not exhaust her administrative remedies, she rebuffed Defendants' attempts to accommodate her, and because Title VII does not protect concerns rooted in one's morality or

physical safety.

a.    <u>Failure to Exhaust</u>

Under Title VII, a plaintiff must file an administrative charge within 300 days of any alleged discrete discriminatory or retaliatory act. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) (citing 42 U.S.C. § 2000e–5(e)(1)). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. Discrete acts, such as terminations, "are not actionable" if a plaintiff fails to exhaust her administrative remedies—that is, if she does not file a related administrative charge within the 300-day limit imposed by 42 U.S.C. § 2000e-5(e)(1). Id.

Here, the allegedly discriminatory act underlying Plaintiff's claim is termination from employment on February 2, 2022. ECF 1 at 5.5, 6.6. Plaintiff expressly alleges that she failed to file an administrative charge, within the 300-day limit or otherwise. Compl. ¶ 4.2. Plaintiff therefore did not exhaust her administrative remedies with respect to her employment's termination and any preceding events, leaving those events not actionable. *See Morgan*, 536 U.S. at 114 ("Because Morgan first filed his charge with an appropriate state agency, only those acts that occurred 300 days before February 27, 1995, the day that Morgan filed his charge, are actionable."); *cf. Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (per curiam) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants").

The failure to exhaust administrative remedies is a fatal defect which cannot be cured. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's Title VII claim with prejudice. See Stephens, 2025 WL 860542, at *4 (dismissing with prejudice analogous Title VII claim for same reason).

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT - 17

1          b.        Blue Origin's Attempts to Accommodate Plaintiff

2          While Plaintiff's failure to exhaust her administrative remedies is dispositive, her Title

3    VII claim also fails because Plaintiff's employment ended only after she failed to cooperate with

4    Blue Origin's attempts to accommodate her requests.

5          "Title VII is premised on bilateral cooperation." *Am. Postal Workers Union v. Postmaster

6    Gen.*, 781 F.2d 772, 777 (9th Cir.1986); *see also Heller v. EBB Auto Co.*, 8 F.3d 1433, 1440-41

7    (9th Cir. 1993). An employee has a "concomitant duty . . . to cooperate in reaching an

8    accommodation [under Title VII]." *Am. Postal Workers*, 781 F.2d at 777. An employee's

9    "correlative duty to make a good faith attempt to satisfy his needs through means offered by the

10   employer" arises after the employer takes the "initial step towards accommodating [the

11   employee's] conflicting religious practice[.]" *Heller*, 8 F.3d at 1441-1442 (emphasis in original).

12   *See also*, *Bartholomew v. Washington*, 693 F. Supp. 3d 1107, 1115 (W.D. Wash. 2023) ("Here,

13   Plaintiff failed to make a good faith attempt to cooperate with his employer's suggested

14   accommodation as he failed to submit a resume by the deadline specified in DSHS's religious

15   accommodation notice. Accordingly, Plaintiff fails to state a claim for failure to accommodate

16   his religious beliefs under Title VII and WLAD.")

17          Relatedly, and in the ADA context, the Ninth Circuit has held that an employer has no

18   duty to accommodate a claimant who has not followed the employer's accommodation process.

19   *See Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1189 (9th Cir. 2001) (holding that employer

20   "had no duty to provide an accommodation for her, given that she never requested one"). In

21   *Gilmore v. Boeing Co.*, No. C16-1617-MJP, 2018 WL 883875 (W.D. Wash. Feb. 14, 2018)

22   ("[A]lthough Plaintiff repeatedly told his managers he suffered from sleep apnea, he did not

23   submit a Reasonable Accommodation Form to Boeing Health Services until January 28, 2015.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT - 18

1   Until this time, Boeing did not have any obligation to accommodate Plaintiff under the ADA or

2   WLAD." *Id*.

3           Here, Plaintiff understood Blue Origin's vaccine requirement for employees and

4   understood she must complete submit an exemption request, which she did. Compl. ¶ 5.7. After

5   being informed of a potential accommodation for that request, Plaintiff told Defendants she

6   would need an additional medical accommodation, and Defendants directed Plaintiff to submit

7   additional medical exemption documentation, including information from her doctor. Compl. ¶¶

8   6.1-6.2. Plaintiff expressly states in her Complaint that she did not submit this required

9   documentation. Compl. ¶ 6.4.

10          Accordingly, Plaintiff's Complaint establishes she did not meet her "correlative duty to

11  make a good faith attempt to satisfy [her] needs through means offered by the employer," *Heller*,

12  8 F.3d at 1441. With that failure, Plaintiff rebuffed Blue Origin's proposed accommodation for

13  Plaintiff's religious exemption request and denied Blue Origin the opportunity to evaluate her

14  medical exemption request. Therefore, the Court grants Defendants' motion to dismiss Plaintiff's

15  failure to accommodate claims with prejudice. *See Bartholomew*, 693 F. Supp. 3d at 1115.

16          c.      Title VII Does Not Protect Plaintiff's Objections

17          Even if Plaintiff had properly availed herself of both the EEOC's and Blue Origin's

18  accommodation processes, her religious discrimination claim still fails as a matter of law. To

19  state a claim for religious discrimination under Title VII, a plaintiff must show that "(1) she had

20  a bona fide religious belief, the practice of which conflicted with an employment duty; (2) she

21  informed her employer of the belief and conflict; and (3) the employer threatened her or

22  subjected her to discriminatory treatment, including discharge, because of her inability to fulfill

23  the job requirements." *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998)

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT - 19

1   (citation omitted).

2           To determine whether a given belief is religious and protected under Title VII, courts

3   have looked to two indicia, among others: whether the belief addresses "fundamental and

4   ultimate questions having to do with deep and imponderable matters," and whether it "is

5   comprehensive in nature . . . as opposed to an isolated teaching." *Africa v. Pennsylvania*, 662

6   F.2d 1025, 1032, 1035 (3d Cir. 1981); *see also Fallon v. Mercy Cath. Med. Ctr. of Se.*

7   *Pennsylvania*, 877 F.3d 487, 491 (3d Cir. 2017) (adopting indicia in the Title VII context after

8   observing that "[t]his definition has been met with considerable agreement" and collecting

9   cases); *Alvarado v. City of San Jose*, 94 F.3d 1223, 1229 (9th Cir. 1996), *as amended* (Sept. 19,

10  1996) (adopting in the First Amendment context).

11          While this inquiry is "most delicate," it is necessary because "'the very concept of

12  ordered liberty precludes allowing' [any person] a blanket privilege 'to make his own standards

13  on matters of conduct in which society as a whole has important interests.'" *Africa*, 662 F.2d at

14  1031 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972)). Courts have therefore

15  dismissed Title VII claims stemming from objections to COVID-19 testing and vaccination—

16  even those objections allegedly rooted in religion—when premised on beliefs not ultimately

17  "religious" in nature. *See, e.g., Craven v. Shriners Hosps. for Child.*, No. 3:22-CV-01619-IM,

18  2024 WL 21557, at*4 (D. Or. Jan. 2, 2024) (dismissing Title VII claim with prejudice because

19  plaintiff's request seeking exemption from required COVID-19 vaccination, while inclusive of

20  Biblical verses and an attestation of belief that the plaintiff's "body is a temple of the Holy

21  Spirit," was predicated on an objection to the vaccine because its "ingredients include

22  carcinogens, neurotoxins, animal viruses, animal blood, allergens, and heavy metals," which can

23  "cause serious harm and even death to the body"); *Detwiler v. Mid-Columbia Med. Ctr.*, No.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT - 20

3:22-cv-01306-JR, 2022 WL 19977290, at *3-4 (D. Or. Dec. 20, 2022), report and recommendation adopted, 2023 WL 3687406 (D. Or. May 26, 2023) (dismissing Title VII claim based on "belief that COVID-19 antigen tests are carcinogenic" because that objection "fail[s] to establish sincere religious opposition under this framework," even where the plaintiff alleged that belief as one rooted in her "Christian beliefs concerning her body being a temple of God"); *Ulrich v. Lancaster Gen. Health*, No. 22-4945, 2023 WL 2939585 (E.D. Pa. Apr. 13, 2023) (dismissing plaintiff's Title VII claim premised on "religious beliefs as a Bible-believing Christian" that COVID-19 "testing would not serve to reflect honor or trust in God, who created my body"); *Fallon v. Mercy Catholic Med. Ctr. Of Se. Pa.*, 877 F.3d 487, 492 (3d Cir. 2017) (dismissing religious discrimination claim of hospital employee whose claim was premised on his beliefs that "one should not harm their own body and … that the flu vaccine may do more harm than good," which are medical beliefs, despite including one general moral commandment which may be paraphrased as, "Do not harm your own body").

Similarly, Plaintiff's allegations, even when construed in the light most favorable to her, at most identify Plaintiff's moral objections to Blue Origin's vaccine requirement. Plaintiff alleges she told a Blue Origin representative that she intended to seek an exemption from any requirement of COVID-19 vaccination based on "personal choice" informed by a recent blood test that revealed COVID-19 antibodies already in her bloodstream. Compl. ¶ 5.1. Plaintiff's ensuing written exemption request was composed only of a third party's testament to Plaintiff's alleged belief that "taking the COVID-19 vaccine would violate her conscience, values, and moral code as this would result in the forfeiting of her bodily sovereignty, which belongs to her Creator." ECF 1-1 at 6-9 (Compl. Ex. 4).

These allegations, the only aspects of Plaintiff's belief about which she alleges informing any Defendant, amount to an isolated moral teaching that is insufficient to support a Title VII discrimination claim. *Fallon*, *877* F.3d at 492.

The remainder of Plaintiff's pleading reveals her objections are grounded in health and safety concerns, not any religious belief. *See*, *e.g.*, Compl. ¶¶ 5.26-5.29, 5.33-5.34 (alleging instances of infections amongst Americans vaccinated against COVID-19, implications of the COVID-19 vaccine's inefficacy, and "over 1000 conditions, many of them chronic, severe and/or life threatening" as potential adverse events from the COVID-19 vaccine); ¶ 8.4 (characterizing Plaintiff's decision to seek an exemption as one "declining an experimental medical intervention" and her termination as "for refusing self-harm"); ¶ 8.5 (alleging with respect to Plaintiff's religious discrimination claim specifically that Blue Origin's vaccination policy was enacted "without evidence" that the vaccine "protected the health of others" and otherwise failing to allege any specifics about Plaintiff's putative religious belief). These allegations relate to the vaccine's putative dangers and inefficacy and underscore that the nature of her belief is concerned with bodily health and autonomy, not religion. *See Craven*, 2024 WL 21557, at *4.

Based on the foregoing, the Court grants Defendants' motion to dismiss Plaintiff's Title VII claim with prejudice.

5.      Plaintiff Fails to Allege Breach of Contract

In Washington, "[a] breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *C 1031 Properties, Inc. v. First Am. Title Ins. Co.*, 175 Wash. App. 27, 33-34 (2013) (cleaned up).

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT - 22

Plaintiff asserts the legal conclusion that "Defendant did not perform its contractual obligations" in three different ways. Compl. ¶¶ 8.6.2-4.

First, Plaintiff alleges that Blue Origin breached her employment contract "by failing to inform Plaintiff of a requirement to take in COVID-19 injectables in order to work in Texas." Compl. ¶ 8.6.2. The Agreement, however, includes no obligation requiring Blue Origin to inform Plaintiff of any such thing, *see* Dkt. 24, Horton Dec. Ex. 1. In addition, Exhibit 4 to Plaintiff's Complaint, which Plaintiff signed in November 2021, makes express that "Blue Origin employees must be fully vaccinated against COVID-19 by 12/8/21." Dkt. 1-1 at 6.

Second, Plaintiff alleges Blue Origin breached the Agreement "by terminating Plaintiff because Plaintiff refused coerced injection with an experimental gene therapy." Compl. ¶ 8.6.3. Again, even ceding arguendo that Blue Origin terminated Plaintiff for "refus[ing] coerced injection with an experimental gene therapy" (which it did not), the Agreement in no way precludes Blue Origin from doing so, and absent a specific promise otherwise, employment is at-will in Washington. *Roe v. TeleTech Customer Care Mgmt. (Colorado) LLC*, 171 Wn.2d 736, 754 (Wash. 2011) ("Common law at-will employment has been the default employment rule in Washington since at least 1928."). The Agreement states expressly that Plaintiff is "an employee-at-will." Agreement at 5, 11.

The Agreement's provision designating Plaintiff an "employee-at-will" also disposes of Plaintiff's third basis for her breach claim. She alleges that Blue Origin breached the Agreement "by terminating Plaintiff without just cause," Compl. ¶ 8.6.4—an obligation that appears nowhere in Plaintiff's factual allegations about the content of the Agreement, and that the Agreement expressly refutes. Agreement at 5.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT - 23

1    Based on the foregoing, the Court grants Defendants' motion to dismiss Plaintiff's breach

2 of contract claim because Plaintiff alleges no plausible breach of the Agreement between her and

3 Blue Origin (and she alleges no other agreement with any other named Defendant), and because

4 the Agreement illustrates that her breach allegations are incurable.

5                                        CONCLUSION

6    For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss (Dkt. 23)

7 and dismisses Plaintiff's Complaint with prejudice. The Clerk is directed to close this case.

8    DATED this 9th day of June, 2025.

9

10    _____

11    BRIAN A. TSUCHIDA
      United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT - 24